## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

IVANILDE PISTORELLO AND
AUGUSTO GRANDO,

           Petitioners,

v.                               Case No:  6:21-cv-611-WWB-LHP

SUPRICEL PARTICIPACOES LTDA
and LUIS GUILHERME SCHNOR,

           Respondents.

_____

### REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

    This cause came on for consideration without oral argument on the following

motion filed herein:

| |
|---|
| **MOTION:**  **RESPONDENTS, SUPRICEL PARTICIPACOES LTDA AND LUIS GUILHERME SCHNOR, MOTION TO DISMISS (Doc. No. 32)** |
| **FILED:**    **November 1, 2022** |
| |
| **THEREON** it is **RECOMMENDED** that the motion be **DENIED.** |

I.      **INTRODUCTION AND RELEVANT FACTUAL ALLEGATIONS**[1]

On April 24, 2013, Petitioners Ivanilde Pistorello and Augusto Grando, both citizens of Brazil, entered into a Purchase and Sale Agreement of Membership Interests and Other Covenants ("PSA") with Respondent Supricel Participacoes LTDA ("Supricel"), a limited liability company headquartered in Sao Paulo, Brazil, and several other Brazilian corporate entities:   Suprirt Participacoes LTDA ("Suprirt"), Rapido Transpaulo LTDA ("Rapido"), and Transpaulo Logistica LTDA ("Logistica").   Doc. No. 1, ¶¶ 1-2, 7; Doc. No. 1-2, at 2.[2]   Petitioners owned Rapido and Logistica, and sold their interests in both companies to Suprirt via the PSA. Doc. No. 1, ¶ 11.   Suprirt was owned and/or controlled by Respondent Luis Guilherme Schnor ("Schnor"), who is also a citizen of Brazil and is the manager and administrator of Suprirt.   *Id.*, ¶¶ 3-4, 11.

Various amendments to the PSA were executed, and the PSA was finalized in January 2014.   *Id.*, ¶ 11.   Petitioners allege that Schnor executed the PSA on

---

[1] At the motion to dismiss stage, courts must assume "that all the [factual] allegations in the complaint are true (even if doubtful in fact)."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

[2] Petitioners attach three exhibits to their Petition, which the undersigned has considered in analyzing the present dispute.   *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").   One of the attached exhibits is the PSA, which lists all of the parties to that Agreement, and establishes, at least for purpose of the present motion, that each party is a citizen of Brazil. Doc. No. 1-2, at 2.

behalf of Supricel, however, Schnor is not himself a party to the PSA.   *Id.*, ¶ 7, Doc. No. 1-2.   The PSA contains a choice of law provision, stating that the PSA shall be governed and construed according to the laws of Brazil, and an arbitration provision, requiring that all disputes be resolved by arbitration before the Center of Arbitration and Mediation of the Chamber of Commerce Brazil – Canada ("CAM-CCBC").   Doc. No. 1, ¶ 7; Doc. No. 1-2, at 14.

As part of the sale, Supricel, which Schnor also owns and is the manager and administrator of, guaranteed the payments to Petitioners.   Doc. No. 1, ¶ 12. Supricel is a Brazilian holding company used by Schnor to maintain participation in at least 20 other companies, and Supricel incorporated Suprirt for the purpose of purchasing Rapido and Logistica.   *Id.*, ¶¶ 12, 14.   Approximately three years after the PSA was executed, Rapido purchased Suprirt, and all of Suprirt's liabilities, which included more than $40,000,000.00 (Reais) in debt, were transferred to Rapido.   *Id.*, ¶ 12.   This rendered Rapido incapable of paying its own debts, including the remaining purchase price due and owing to Petitioners under the PSA.   *Id.*

During the negotiations and execution of the PSA, Schnor represented to Petitioners that Supricel had a net equity of $80,296,000.00 (Reais) in 2013, but by 2017, Supricel's equity was actually $-294,402,000.00 (Reais).   *Id.*, ¶¶ 13, 22. Petitioners allege that Schnor "either misrepresented the value of Supricel at the

time of purchase or stripped it of all assets which should have been used to pay the Petitioners." *Id.* Petitioners further allege that Schnor effectuated the transfer of Suprirt's debts to Rapido for no consideration, and transferred shares and property of companies owned by Supricel to Schnor's family members. *Id.*, ¶¶ 17-18. And upon information and belief, Petitioners allege that Schnor used the corporate form of Supricel to pay for real property located in Orange and Osceola Counties in Florida and/or to pay for the carrying costs for these properties. *Id.*, ¶ 19.

While not clear from the Petition, it appears that payments to Petitioners under the PSA ceased at some point, and based on Supricel's default under the PSA, Petitioners filed a request for arbitration before the CAM-CCBC on November 30, 2016. *Id.*, ¶ 8. On November 1, 2019, CAM-CCBC issued an award in favor of Petitioners and against Supricel and Rapido in the sum of $2,510,552.03 (Reais). *Id.*, ¶ 9; *see also* Doc. No. 1-3. Schnor was not named as a party to the arbitration award. By the present Petition, filed on April 6, 2021, Petitioners seek to confirm the arbitration award in this Court, but only as it pertains to Supricel. Doc. No. 1, ¶¶ 7-10 (Count I). Petitioners have not named Rapido as a party to the present action.

By the same Petition, Petitioners also allege claims of fraud and alter ego liability, under Brazilian law, against Schnor. Doc. No. 1, at 4-10 (Counts II-III). Petitioners allege that as partner, manager, and administrator of Supricel, Schnor controlled the company, was the alter ego of Supricel, and is therefore responsible

for Supricel's debts under Brazilian Civil Code, including the entire amount of the arbitration award.  *Id.*, ¶¶ 15-16, 26-33, *see also id.*, at 10.   Petitioners also allege that Schnor committed fraud under Brazilian law when he represented to Petitioners that Supricel was liquid and had assets in excess of $80,296,000.00 (Reais), and/or when Schnor stripped Supricel of all of its assets that could have been used to pay Petitioners.  *Id.*, ¶¶ 13, 22.   Petitioners seek unspecified damages from Schnor based on his "fraudulent and improper conduct."  *Id.*, at 8.

Although this action commenced in this Court on April 6, 2021, Petitioners were not able to serve either Schnor or Supricel in Brazil until sometime between June and September 2022.  *See, e.g.,* Doc. Nos. 9, 11-12, 14, 16, 19-24, 26, 28, 31, 33-34.   However, it now appears that service has been properly effected upon both Respondents, who have now jointly filed a motion seeking to dismiss the Petition in its entirety.   Doc. No. 32.   Petitioners have filed a response in opposition, Doc. No. 39, therefore the motion is fully briefed and ripe for consideration.

The motion to dismiss has been referred to the undersigned, and for the reasons discussed herein, I will respectfully recommend that the motion to dismiss (Doc. No. 32) be denied in its entirety.

## III.   ANALYSIS

### A.     *The New York Convention*

This case arises under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 (Dec. 28, 1970) (The "New York Convention").   *See also* 9 U.S.C. § 202.   Both the United States and Brazil are signatories to the Convention.   *See generally,* https://uncitral.un.org/en/texts/arbitration/conventions/foreign_arbitral_awards/status2 (last visited June 15, 2023).   The New York Convention only applies to "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought" and to "arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought."   N.Y. Convention, art. I(1). An arbitral award is "made" in the country of the "arbitral seat," which is "the jurisdiction designated by the parties or by an entity empowered to do so on their behalf to be the juridical home of the arbitration."   Restatement (Third) of the U.S. Law of Int'l Commercial Arbitration § 1-1 (s), (aa) (Am. Law Inst., Tentative Draft No. 2, 2012).   Thus, the New York Convention applies to arbitral awards "made" in a foreign country that a party seeks to enforce in the United States (known as foreign arbitral awards), to arbitral awards "made" in the United States that a party seeks to enforce in a different country, and to nondomestic arbitral awards that a

party seeks to enforce in the United States.   *See, e.g., id.* § 1-1 (i), (k), (o).   *See also Corporacion AIC, SA v. Hidroelectrica Santa Rita S.A.*, 34 F. 4th 1290, 1293-94 (11th Cir. 2022), *overruled on rehearing en banc on other grounds by* 66 F.4th 876 (11th Cir. 2023); *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 70-71 (2d Cir. 2017). In this case, there is no dispute that the parties are all citizens of Brazil, the dispute arose out of a contract executed and performed in Brazil, arbitration under the PSA took place in Brazil, and the arbitration award that Petitioners seek to confirm was issued by a competent authority in Brazil.   As such, the New York Convention governs.

Congress has implemented the New York Convention through Chapter 2 of the Federal Arbitration Act ("FAA").   *See* 9 U.S.C. §§ 201, *et seq.   See also Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520, n.15 (1974).   Chapter 2 provides that the New York Convention applies to arbitration awards that are not "entirely between citizens of the United States," and United States District Courts have original jurisdiction over all actions or proceedings to enforce such arbitration awards, regardless of the amount in controversy.   9 U.S.C. §§ 202-203.   Venue for actions to enforce foreign arbitration awards lies in "any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought, or in such court for the district and division

which embraces the place designated in the agreement as the place of arbitration if such place is within the United States." *Id.* § 204.

Within three (3) years of the date that an arbitration award falling under the New York Convention is made, any party to the arbitration may apply to any court with jurisdiction for an order confirming the award "as against any other party to the arbitration." *Id.* § 207.   And the court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Id.*   Article V of the New York Convention lists seven grounds upon which a court can refuse to recognize or enforce a foreign arbitration award:   (1) the parties to the arbitration agreement were under some incapacity or the arbitration agreement was not valid under the law to which the parties subjected it; (2) the party against whom the arbitration award is being enforced was not given proper notice of the arbitrator, the arbitration proceedings, or was otherwise unable to present her case; (3) the arbitration award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters outside the scope of the submission to arbitration; (4) the composition of the arbitral authority or the arbitral procedure was not in accordance with the parties' agreement or the law of the country where the arbitration took place; (5) the arbitration award has not yet become binding on the parties, or has been set aside or suspended by a competent authority in the

country in which, or under the law of which, the award was made; (6) the subject matter of the difference is not capable of settlement by arbitration under the law of the country in which enforcement is sought; or (7) the recognition or enforcement of the arbitration award would be contrary to the public policy of the country in which enforcement is sought. *Corporacion AIC, SA v. Hidroelectrica Santa Rita, S.A.*, 66 F.4th 876, 884-85 (11th Cir. 2023) (*en banc*).[3]   "[T]he party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses applies." *Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco*, C.A., 49 F.4th 802, 809–10 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 786 (2023) (quotations omitted).

Against this backdrop, the undersigned now turns to each of Petitioners' claims and Respondents' arguments for dismissal.

---

[3] Chapter 1 of the FAA, which applies to arbitration agreements that are between one or more citizens of the United States, *see* 9 U.S.C. § 202, also applies to enforcement actions as to foreign arbitration awards, but only to the extent that Chapter 1 does not conflict with Chapter 2.   9 U.S.C. § 208.   Chapter 1 provides mechanisms by which a party can seek to vacate, correct, or modify an arbitration award, *see* 9 U.S.C. §§ 10-12, however, the Eleventh Circuit has recently clarified that only courts in the primary jurisdiction – the country which is the legal seat of the arbitration or whose law governs the conduct of the arbitration – can vacate an arbitral award. *Corporacion AIC, SA*, 66 F. 4th at 883-84 (*en banc*).   All other countries that are signatories to the New York Convention are considered secondary jurisdictions, which only have the authority to decide whether to recognize and enforce an arbitral award.   *Id.*   There is no dispute that the primary jurisdiction in this case is Brazil, therefore, this Court's authority and jurisdiction is limited to determining whether to recognize and enforce the arbitration award and, as noted above, the only bases for declining to recognize and enforce an arbitral award are enumerated in Article V of the New York Convention.

B.      *Count I Against Supricel – Confirmation of Arbitration Award*

Petitioners' first claim is a request to confirm in this Court the $2,510,552.03 (Reais) arbitration award issued by CAM-CCBC.   Doc. No. 1, ¶¶ 7-10.   Petitioners only seek confirmation of this award against Supricel, there is no mention of Rapido in Count I.

Supricel seeks dismissal of Count I on two bases.   First, that Petitioners failed to join Rapido, who as a party to the arbitration award is an indispensable party pursuant to Federal Rule of Civil Procedure 19, and therefore any decree entered by this Court would greatly impact Rapido's rights.   Doc. No. 32, at 5-8.   And second, that Petitioners have failed to sufficiently assert a claim for relief because they have not attached several documents from various litigations in Brazil relating to the arbitration award – documents that are nowhere cited or mentioned in the Petition.   *Id.*, at 18-19.   *See also* Doc. No. 1.   Upon consideration, the undersigned finds both arguments unpersuasive.

Neither of these arguments fall under any of the seven (7) enumerated grounds for refusal or deferral of recognition or enforcement of a foreign arbitration award set forth in Article V of the New York Convention.   *See Corporacion AIC, SA*, 66 F.4th at 885.   Respondents make no argument and provide no authority that would permit them to assert these arguments.   As such, the undersigned will recommend that Respondents' motion to dismiss as it pertains to Count I be denied.

*See Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 92 (2d Cir. 2005) ("[A] district court is strictly limited to the seven defenses under the New York Convention when considering whether to confirm a foreign award." (citing 9 U.S.C. § 208)); *Sural (Barbados) Ltd. v. Gov't of the Republic of Trinidad*, No. 1:15-CV-22825-KMM, 2016 WL 4264061, at *3 (S.D. Fla. Aug. 12, 2016) ("[A] district court must confirm an arbitration award under the Convention unless one of the seven enumerated defenses in Article V apply."). *See also Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1292, n.3 (11th Cir. 2004) ("Once the proponent of the award meets his . . . jurisdictional burden of providing a certified copy of the award and the arbitration agreement, he establishes a prima facie case for confirmation of the award.   That is, the award is presumed to be confirmable.   The defendant to the confirmation action can overcome this presumption only by making one of the showings enumerated in the Convention.").[4]

---

[4] Even if Respondents had established that their arguments were appropriately made, the undersigned finds them unpersuasive on their merits.   Other than citation to Rule 19 and two (2) Eleventh Circuit cases setting forth the general standards for joinder, Respondents provide no authority for the proposition that Rapido is, in fact, an indispensable party.   Doc. No. 32, at 5-8.   Rather, a review of the arbitration award demonstrates that both Rapido and Supricel are jointly liable for payment of the award amount – an award based in large part on breach/default of the PSA.   Doc. No. 1-3, at 55. And in the breach of contract context, the Eleventh Circuit has held that "joint obligors are not indispensable parties to a suit based on breach of contract."   *Brackin Tie, Lumber & Chip Co. v. McLarty Farms, Inc.*, 704 F.2d 585, 586 (11th Cir. 1983).   Moreover, as Respondents themselves acknowledge, the Federal Rules of Civil Procedure do not require a party to attach all relevant records to a complaint – particularly when said records are nowhere mentioned in the pleading.   Doc. No. 32, at 18.   *See, e.g.*, *Yencarelli v. USAA Cas. Ins. Co.*, No. 8:17-cv-2029-T-36AEP, 2017 WL 6559999, at *2 (M.D. Fla. Dec. 22, 2017) (holding that a

### C.     Counts II and III – Fraud and Alter Ego Against Schnor

Petitioners assert Counts II and III against Schnor alone.   Count II alleges that Schnor committed fraud either when he "fraudulently misrepresented the value of Supricel at the time it guaranteed the sale to Suprirt," or when Schnor "stripped [Supricel] of all of its assets which should have been used to pay the Petitioners."   Doc. No. 1, ¶ 22.   Petitioners demand judgment for their damages, but do not provide any further quantification of those damages.   *Id.*, at 8.   In Count III, Petitioners allege that Schnor is the alter ego of Supricel and should be held liable for all of Supricel's debts, including the entire amount of the arbitration award.   *Id.*, at 9-10.

Schnor seeks dismissal of these claims on a variety of grounds:   (1) this Court lacks supplemental jurisdiction for these claims; (2) the PSA's forum selection clause should be enforced as to the claims against Schnor, and therefore these claims can only be litigated in Brazil; (3) the doctrine of forum non conveniens weighs in favor of dismissal because the more convenient forum to hear the entirety of this action is Brazil; and (4) the fraud claim does not satisfy the heightened pleading standards

---

party is not required, under the Federal Rules of Civil Procedure, to attach to the complaint documents referenced in the pleading); *U.S. ex rel. Chabot v. MLU Servs., Inc.*, 544 F. Supp. 2d 1326, 1329 (M.D. Fla. 2008) ("[N]othing in the federal Rules of Civil Procedure requires Plaintiff to attach any document to the complaint." (citation omitted)).

of Federal Rule of Civil Procedure 9(b).   Doc. No. 32, at 8-17.   Petitioners, of course, oppose.   Doc. No. 39, at 5-20.   Upon consideration, the undersigned finds that each of Schnor's arguments fails, and will therefore recommend that the motion to dismiss be denied in its entirety.

> 1.   *Supplemental Jurisdiction*

Schnor first argues that this Court should decline to exercise supplemental jurisdiction over the fraud and alter ego claims.   Doc. No. 32, at 8-11.   The Eleventh Circuit has not addressed the precise issue before the Court – whether a court that has original jurisdiction over an action to enforce a foreign arbitration award under the New York Convention also has supplemental jurisdiction over attendant third-party claims for alter ego and fraud.   However, as Petitioners argue, the Second Circuit has addressed this issue, finding that federal courts have *original* jurisdiction over such third-party claims under the New York Convention, and that a party seeking to enforce a foreign arbitration award is not required to confirm the award prior to seeking to enforce it – rather it can all be done in one petition.   *CBF Industria de Gusa*, 850 F.3d at 75 ("[T]he question of whether a third party not named in an arbitral award may have that award enforced against it under a theory of alter-ego liability, or any other legal principle concerning the enforcement of awards or judgments, is one left to the law of the enforcing jurisdiction, . . . under the terms of Article III of the New York Convention.").   *See*

*also Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1440 (11th Cir. 1998), *overruled on other grounds by Corporacion AIC, SA*, 66 F.4th 876 (noting that Chapter 2 of the FAA, which incorporates the New York Convention, "creates original federal subject-matter jurisdiction over any action arising under the Convention." (citing 9 U.S.C. § 203)); *Corporacion AIC, SA*, 66 F.4th at 882 ("Confirmation under the FAA is essentially the same as recognition and enforcement under the New York Convention.").

Schnor does not address this body of law, and in fact does not discuss in any way the interplay of the New York Convention with the claims against him.   In the absence of any legal authority to the contrary, the undersigned finds *CBF Industria de Gusa* persuasive, and follows its reasoning here.   Therefore, the undersigned will recommend that Schnor's first argument in favor of dismissal be denied.   *Cf. Priv.-Assured Inc. v. AccessData Corp., Ltd.*, No. 2:14-CV-00722-CW-DBP, 2017 WL 2963435, at *2 (D. Utah July 11, 2017) (finding no supplemental jurisdiction over alter ego liability claims attached to action to confirm foreign arbitration award under New York Convention where plaintiff presented the court with no authority to suggest that it would be appropriate to exercise jurisdiction).[5]

---

[5] Because the undersigned finds that original jurisdiction exists under the New York Convention, the undersigned has not undertaken an analysis of supplemental jurisdiction.   However, persuasive decisional authority suggests that supplemental jurisdiction would exist over the claims against Schnor.   *See, e.g., Mazlin Trading Corp. v. WJ Holding Ltd.*, No. 19 CV 7652-LTS, 2021 WL 1164127 (S.D.N.Y. Mar. 26, 2021).

2.       *The PSA's Forum Selection Clause*[6]

Next, Schnor argues that the forum selection clause in the PSA should govern the fraud and alter ego claims against him, and that these claims must be brought in Brazil.[7]   Doc. No. 32, at 12-13.   This claim fails for two reasons.   First, the PSA's "Governing Law and Jurisdiction" provision applies to all disputes arising from the

_____

    For the first time in their opposition brief, Petitioners also attempt to allege ancillary jurisdiction with respect to their claims against Schnor.   Doc. No. 39, at 7-8.   Assuming for the moment that Petitioners are able to amend their Petition to include this new theory of subject matter jurisdiction, their arguments are unsuccessful.   *See Peacock v. Thomas*, 516 U.S. 349, 354–58 (1996) (finding no ancillary jurisdiction over a piercing the corporate veil claim lodged against employer in attempt to reach assets of a third party because the Court has "never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment"); *KHI Liquidation Tr. v. S & T Painting*, No. 8:17-mc-133-T-35JSS, 2018 WL 1726435, at *1 (M.D. Fla. Apr. 10, 2018) (stating that the court's ancillary jurisdiction does not extend "to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment").   *See also Nat'l Maritime Servs., Inc. v. Straub*, 776 F.3d 783, 786-87 (11th Cir. 2016) (distinguishing claims for fraudulent transfer, which are limited to recovery of assets from a party already liable for a judgment that were fraudulently transferred to another, and therefore ancillary jurisdiction exists, from claims for alter ego and/or piercing the corporate veil, which seek to impose liability for a judgment on a third party not already liable for that judgment).   Petitioners do not address this legal authority, nor cite any cases that would allow the Court to ignore this precedent simply because the claims are brought in the same Petition.   *See* Doc. No. 39, at 7-8.

    [6] Unlike Count I, which seeks to confirm the arbitration award, the undersigned is not aware of any precedent that would prohibit the Court from considering defenses to the fraud and alter ego claims beyond those listed in Article V of the New York Convention.   To the contrary, as discussed below, several courts have considered other defenses when addressing similar third-party claims.

    [7] Petitioners do not argue that the forum selection clause should not apply to Schnor simply because of his status as a non-party to the PSA.   *See Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998) (finding that a non-party to a contract can be bound by a forum selection clause if the non-party is so closely related to the dispute that it would be foreseeable that he would be bound).

PSA, and mandates that all such disputes be resolved by binding arbitration.   Doc. No. 1-2, at 14-15.   That is exactly what happened – a dispute arose among the parties to the PSA, which was settled in binding arbitration.   The present proceedings in this Court are to enforce the already final arbitration award, and there is nothing in the PSA that mandates any specific forum for such an action. To the contrary, the PSA expressly states that the parties agree that any arbitration order is definitive and binding, "and enforceable as an extrajudicial executive instrument binding the parties and their successors."   *Id.*, at 14.   *See also id.* (allowing each party to request judicial measures to execute any arbitration decision and final award).

Second, and much more troubling, Schnor quotes the PSA's forum selection clause as follows:

> Notwithstanding the above provisions, each Party remains entitled to request judicial measures . . . to execute any arbitration decision, including the final award . . . the Parties elect the Court of the district of Sao Paulo, State of Sao Paulo.

Doc. No. 32, at 13.

But Schnor omits key language from this paragraph of the PSA.   The relevant portion of the "Governing Law and Jurisdiction" provision actually states:

> Notwithstanding the above provisions, each Party remains entitled to request judicial measures: (a) to obtain any urgent measures that are necessary prior to the initiation of the arbitration procedure, and such measure will not be interpreted as a waiver of the arbitration procedure by the Parties; and (b) to execute any arbitration award,

including the final award.   *In case it is necessary to obtain a preliminary injunction before the institution of the arbitration procedure, the Parties elect the Court of the district of São Paulo, State of São Paulo.*

Doc. No. 1-2, at 14-15.

There is no other mention of Brazilian courts in the PSA's "Governing Law and Jurisdiction" section.   *Id.*   Applying ordinary principles of contract law to this clear and unambiguous language – which the undersigned can only presume was deliberately omitted from Schnor's opposition – the undersigned finds that the only time the parties to the PSA agreed upon a specific forum was in the event that a preliminary injunction proceeding was initiated prior to the arbitration proceedings.[8]   *See, e.g.*, *Great S. Wood Preserving, Inc. v. A & S Paving, Inc.*, No. 1:20-CV-872-JTA, 2021 WL 769653, at *2 (M.D. Ala. Feb. 26, 2021) (noting that forum selection clauses in contracts are enforceable in federal courts, they are presumptively valid and enforceable, and are interpreted according to ordinary principles of contract law).   Those facts are not before the Court here, there are no preliminary injunction proceedings and the arbitration proceedings have concluded.[9]   Thus, the undersigned recommends that the Court reject Schnor's second argument in favor of dismissal.

_____

[8] The undersigned finds this omission of key language concerning, and reminds Schnor and his counsel of their duty of candor to the Court and their obligations under Federal Rule of Civil Procedure 11.

[9] Schnor's bald statement that "Petitioners and Supricel have relied on this specific provision of the Purchase and Sale Agreement to bring numerous actions related to the

3.    *Forum Non Conveniens*

Schnor's third argument for dismissal is based on the doctrine of forum non conveniens.   Doc. No. 32, at 14-16.   Because "the question of whether a third party not named in an arbitral award may have that award enforced against it under a theory of alter-ego liability, or any other legal principle concerning the enforcement of awards or judgments, is one left to the law of the enforcing jurisdiction, . . . under the terms of Article III of the New York Convention," the undersigned follows Eleventh Circuit and Middle District of Florida precedent to determine whether forum non conveniens mandates dismissal of this action.   *See CBF Industria de Gusa*, 850 F.3d at 75.   *See also In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 495 (2d Cir. 2002) (noting that the doctrine of forum non conveniens applies to confirmation proceedings under the New York Convention because "the proceedings for enforcement of foreign arbitral awards are subject to the rules of procedure that are applied in the courts where enforcement is sought").

The doctrine of forum non conveniens provides that a district court has inherent power to decline to hear a case in which there is proper jurisdiction and venue.   *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947).   "It is a flexible tool,

---

arbitration award, all of which took place . . . in Brazil" is unavailing.   *See* Doc. No. 32, at 13.   Schnor provides no facts or evidence to support this statement, and it is therefore entirely unclear why the parties filed actions in Brazil, or even the nature of those actions.

used to prevent litigation that would 'establish oppressiveness and vexation to a defendant out of all proportion to [the] plaintiff's convenience' or that is unsuitable for the domestic forum because of 'the court's own administrative and legal problems.'"   *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1338 (11th Cir. 2020) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)).

To obtain a dismissal under forum non conveniens, a defendant must establish that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice."   *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001).   Private interests include "the parties' relative ease of access to sources of proof, access to witnesses, ability to compel testimony, the possibility of viewing the premises, and the enforceability of a judgment."   *Otto Candies*, 963 F.3d at 1338 (citing *Gulf Oil*, 330 U.S. at 508).   Public interests "include a sovereign's interests in deciding the dispute, the administrative burdens posed by trial, and the need to apply foreign law."   *Id.*   "A defendant has the burden of persuasion as to all elements of a forum non conveniens motion[.]"   *Leon*, 251 F.3d at 1311.   Because "the touchstone of forum non conveniens analysis is convenience, controlling weight cannot be given to any one factor in the balancing process or the doctrine would lose much of the flexibility that is its essence."   *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir.1983), *abrogated on other*

*grounds by Fresh Results, LLC v. ASF Holland, B.V.*, 921 F.3d 1043 (11th Cir. 2019) (citing *Piper Aircraft Co.*, 454 U.S. at 256).

In cases involving a domestic plaintiff, a defendant invoking forum non conveniens "bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). The defendant must offer "positive evidence of unusually extreme circumstances," and the district court must be "thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country." *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica*, 382 F.3d 1097, 1101 (11th Cir. 2004) (quoting *La Seguridad*, 707 F.2d at 1308 n.7). Foreign plaintiffs are also entitled to a presumption in favor of their forum choice, but the presumption "applies with less force." *Sinochem Int'l*, 549 U.S. at 430 (quoting *Piper Aircraft*, 454 U.S. at 255–56). However, reduced deference is "not an invitation to accord a foreign plaintiff's selection of an American forum *no* deference since dismissal for forum non conveniens is the exception rather than the rule." *Otto Candies*, 963 F.3d at 1339 (quoting *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 45–46 (3d Cir. 1988)).

Turning to the first element, the undersigned finds that an adequate alternative forum is available to resolve the fraud and alter ego claims – the courts of Sao Paulo, Brazil – and Petitioners make no argument to the contrary. *See* Doc.

No. 39, at 14-17.   *See also Leon*, 251 F.3d at 1312 (a foreign forum may be presumed adequate unless the plaintiff makes a showing to the contrary).   However, this is where Schnor's success ends, for Schnor has failed to satisfy his burden of persuasion that public and private factors weigh in favor of dismissal.

"The public interest factors include: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized controversies resolved at home; (3) the interest in having the trial of a diversity case in a forum that is familiar with the law governing the action; (4) the avoidance of unnecessary problems in conflicts of law or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty."   *Wylie v. Island Hotel Co. Ltd.*, 774 F. App'x 574, 579 (11th Cir. 2019) (citation and quotation marks omitted)).[10]   Schnor does not address a majority of these factors, instead he merely states, in conclusory fashion, that "the American public does not have a particularly strong interest in having a Florida court decide this largely Brazilian transaction.   Petitioners' have failed to show that the Courts of Brazil are busier or less effective than the Middle District of Florida, or that Petitioners' claims could not be adjudicated in a reasonable amount of time."   Doc. No. 32, at 15.

---

[10] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

This is the entirety of Schnor's argument with respect to public interest factors.   He provides no evidence in support, and he does not address, as alleged in the Petition, that the property that Petitioners will ultimately seek to recover in satisfaction of the arbitration award is located in Florida.[11]   *See, e.g., Geico Marine Ins. Co. v. Amzim Marine Servs., LLC*, No. 2:21-cv-829-SPC-KCD, 2022 WL 16950242, at *5 (M.D. Fla. Nov. 15, 2022) (finding public interests, such as the fact that "modern technology has reduced the importance of proceeding in the forum with immediate access to the sources of proof," and that "the relevant property" is in Florida, weighed in favor of keeping the case in Florida).   Petitioners' claims are rooted in Schnor's allegedly fraudulent misuse of funds to purchase property in Florida, thus, the undersigned finds that Florida does have an interest in the resolution of this case.   *Cf. La Dolce Vita Fine Dining Co. v. Zhang*, No. 21-CV-3071 (LAIC), 2023 WL 1927827, at *6 (S.D.N.Y. Feb. 10, 2023) (denying motion to dismiss confirmation of arbitration award proceedings on forum non conveniens grounds where foreign petitioners sued in New York for purposes of attachment of property located in New York, even despite finding that China may have had a stronger connection to

---

[11]   All factual allegations in the complaint are accepted as true to the extent that they are uncontroverted by affidavits or other evidence, or have not been challenged in an evidentiary hearing.   *Otto Candies*, 963 F.3d at 1336.   Schnor has not submitted any affidavits or other evidence, and has not requested an evidentiary hearing to challenge any of Petitioners' allegations.   *See* Doc. No. 32.

the underlying dispute between the parties).   And Schnor's bare statement that *Petitioners* have not demonstrated that Brazilian courts are busier or less effective than this Court misapplies the law – for it is Schnor who has the burden of persuasion as to all elements of the forum non conveniens analysis, not Petitioners. *See Otto Candies*, 963 F.3d at 1346; *Leon*, 251 F.3d at 1311.

Schnor's motion fares even worse when the undersigned looks at the private interest factors.   These factors relate to the relative convenience of the parties, and include the "ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive."   *Leon*, 251 F.3d at 1314 (quoting *Gulf Oil*, 330 U.S. at 508).   Simply put, Schnor does not discuss these factors *at all*.   *See* Doc. No. 39, at 14-16.   The absence of *any discussion*, much less any evidence in support, is fatal to Schnor's motion.   *See Piper Aircraft Co.*, 454 U.S. at 258–59 (although detailed offers of proof are unnecessary, a defendant must submit sufficient information to allow the court to balance the parties' interests); *Otto Candies*, 963 F.3d at 1348-49 (finding defendant failed to carry its burden of persuasion on motion to dismiss on forum non conveniens grounds where defendant merely made argument in its motion, contradicted allegations in the complaint without discrete evidence in support, and failed to support its contentions with positive evidence); *Med-X Glob., LLC v.*

*SunMed Int'l, LLC*, No. 19-20722-CIV, 2019 WL 3752619, at *3 (S.D. Fla. Aug. 8, 2019) (denying motion to dismiss on forum non conveniens grounds where defendant merely asserted that witness and evidence were not located in Florida, but presented no evidence in support).   Accordingly, the undersigned will recommend that the Court reject Schnor's motion to dismiss on forum non conveniens grounds.[12]

    *4.    The Fraud Claim and Fed. R. Civ. P. 9(b)*

Schnor's final argument in favor of dismissal applies solely to the fraud claim (Count II), and is premised on his contention that Petitioners have not satisfied the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).[13]

---

[12] Because Schnor must satisfy all three elements in order to obtain a forum non conveniens dismissal, and because he has failed to satisfy the public and private interest factors, the undersigned has not analyzed the third factor – whether Petitioners could reinstate their claims in Brazil without undue inconvenience or delay.   *See Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-24277-CIV, 2015 WL 12867842, at *2 (S.D. Fla. July 23, 2015) (declining to address other factors and denying motion to dismiss on forum non conveniens grounds where defendants failed to meet their burden as to the private interest factors).   However, the undersigned notes that Schnor again provides no information or evidence to support this third element, beyond speculation that "[t]here is no reason to believe that Petitioners claims would be any less viable in Brazil. . . ."   Doc. No. 32, at 15.   In addition, Petitioners were unable to effectuate service on Schnor in Brazil for over a year, and it is undisputed that Brazil would not have jurisdiction over any real property in Florida.   Thus, on balance, the undersigned would also find that Schnor has failed to satisfy his burden of persuasion as to the third element.

[13] While Schnor references "claims" in his motion, it is clear that this argument only applies to the fraud claim (Count II), and Schnor makes no argument that Fed. R. Civ. P. 9(b) would apply to the alter ego claim.   Doc. No. 32, at 16-17.   *See also Republic Bank of Chicago v. Gehrisch Ins. & Fin. Servs., Inc.*, No. 2:21-cv-415-SPC-NPM, 2022 WL 3646067, at *4 (M.D. Fla. July 21, 2022) (noting that in an alter ego or piercing the corporate veil claim, "[t]here is no requirement of fraud, only a mere instrumentality used to mislead a creditor.

When deciding a Rule 12(b)(6) motion to dismiss, a court must accept all factual allegations in the complaint as true, construing them in the light most favorable to the plaintiff. *Murphy v. F.D.I.C.*, 208 F.3d 959, 962 (11th Cir. 2000). Generally, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Specifically, the factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). While "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally," when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Generally, this occurs where the pleading alleges:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and

---

. . .  So plaintiffs need not always plead veil piercing with particularity because they may pursue a theory other than fraud" (quotation marks and citations omitted)). Nor does Schnor make any argument, or cite to any legal authority, establishing that Petitioners have failed to sufficiently allege a claim for alter ego liability that would satisfy the notice pleading standards of Fed. R. Civ. P. 8 and 10. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Schnor's vague reference to Petitioners' failure to identify the alleged property Schnor owns in Florida is insufficient to stretch this argument to also cover the alter ego claim (Count III). Doc. No. 32, at 17.

(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and

(3) the content of such statements and the manner in which they misled the plaintiff, and

(4) what the defendants obtained as a consequence of the fraud.

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotation marks omitted).

"Although Rule 9 imposes a heightened pleading standard, it does not replace the 'short and plain' notice requirements of Rule 8, as 'Rule 9(b) must not be read to abrogate [R]ule 8 . . . and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of [R]ule 9(b) with the broader policy of notice pleading.'"  *SMC Constr. Se., LLC v. Claypool Holdings LLC*, No. 6:21-cv-747-WWB-GJK, 2021 WL 9595536, at *1 (M.D. Fla. Sept. 1, 2021) (quoting *Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985)).

Schnor argues that Petitioners have completely failed to satisfy Fed. R. Civ. P. 9(b) because Petitioners have not alleged any fraudulent acts performed by Schnor, and have not alleged the "who, what, when, where and how" of the alleged fraud.   Doc. No. 32, at 16.   Schnor further argues that Petitioners' fraud claim does not provide Schnor with fair notice of the claim so that he can formulate a defense. *Id.*   The undersigned disagrees.

A fair reading of the Petition shows that Petitioners have alleged Schnor, in his role as controlling partner, manager, and administrator of Supricel, fraudulently represented to Petitioners in 2013 that Supricel was liquid and had assets in excess of $80,296,000.00 (Reais).   Doc. No. 1, ¶¶ 13, 22.   Petitioners further allege that Schnor made this misrepresentation at the time Petitioners sold their interests in their companies as part of the PSA.   *Id.*   Petitioners also allege that Schnor committed fraud when, approximately three years after execution of the PSA, Schnor orchestrated the transfer of all of Suprirt's liabilities to Rapido, thereby ensuring that Petitioners would not receive the balance of the purchase price due and owing under the PSA.   *Id.*, ¶¶ 12-13, 22.   Thus, Petitioners allege that Schnor either committed fraud when he misrepresented the value of Supricel at the time that it guaranteed the sale to Suprirt, or when he stripped Suprirt of all of its assets that should have been used to pay Petitioners.   *Id.*, ¶¶ 12, 22.   With respect to damages, Petitioners allege that they have suffered harm "because neither Supricel, Suprirt, (whose debts were Schnor absorbed into Rapido), nor Rapido have the funds to pay the Petitioners as a result of Schnor's misrepresentations and fraudulent acts."   *Id.*, ¶ 23.   Petitioners further allege that Schnor benefited from the fraud when he drained Supricel of any assets in a clear attempt to defraud Petitioners, and that Schnor utilized the assets of Supricel to purchase real property in Florida.   *Id.*, ¶¶ 5, 13, 19.

Viewing these allegations in conjunction with the notice pleading standards of Rule 8 and the heightened pleading standards of Rule 9(b), the undersigned finds that Petitioners have sufficiently alleged a claim for relief that withstands dismissal at this stage of the case.   The allegations identify what statements were made and/or actions taken (or not taken), who made these statements/actions, the approximately time-period that they occurred, the content of the statements/actions, how they misled Petitioners, the damage Petitioners suffered, and the benefits Schnor obtained.   Count II is thus sufficient to satisfy the particularity required under Rule 9 while balancing the notice requirements of Rule 8.  *See SMC Constr. Se., LLC*, 2021 WL 9595536, at *2; *PartsHawk, LLC v. Tribridge Holdings, LLC*, No. 8:19-cv-353-T-36AEP, 2020 WL 10456791, at *1 (M.D. Fla. Aug. 26, 2020) (denying motion to dismiss where fraud claim sufficiently alleged "facts as to time, place, and substance of the defendant's alleged fraud." (quoting *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1308 (11th Cir. 2002))). *See also Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-61019-CIV, 2018 WL 8899231, at *8 (S.D. Fla. Oct. 29, 2018), *report and recommendation adopted*, 2018 WL 8899306 (S.D. Fla. Nov. 15, 2018) (denying motion to dismiss where "there is a level of specificity found throughout the [second amended complaint] that meets the heightened pleading requirements under Rule 9(b)").

## V.     RECOMMENDATION.

For the reasons discussed above, I respectfully **RECOMMEND** that the Court **DENY** Respondents' Motion to Dismiss (Doc. No. 32).

### NOTICE TO PARTIES

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's factual findings and legal conclusions.  Failure to serve written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   11th Cir. R. 3-1.

Recommended in Orlando, Florida on June 26, 2023.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy